# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

NATALIE BRADLEY and REBECCA
ALVAREZ,

    Plaintiffs,

vs.            Civ. No.  24-cv-00497

NEW MEXICO HIGHLANDS UNIVERSITY,
BOARD OF REGENTS OF NEW MEXICO
HIGHLANDS UNIVERSITY (A/K/A THE
BOARD OF REGENTS OF NEW MEXICO
NORMAL UNIVERSITY), GLORIA GADSDEN,
and JILL DIAMOND.

    Defendants.

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
## AND ALTERNATIVELY FOR A MORE DEFINITE STATEMENT

  Plaintiffs Natalie Bradley ("Bradley") and Rebecca Alvarez ("Alvarez") respond to

Defendants' *Motion* [Doc. 6] and *Memorandum* [Doc. 7] as follows.

## I.  The Complaint Does Not Violate Rule 8(a).

  Defendants claim the *First Amended Complaint* [Doc. 4] ("Complaint") offers no "short

and plain" statement of jurisdiction, claims, and relief sought.  *Memorandum* at 3 (citing Fed. R.

Civ. P. 8).  But in truth, the *Complaint* does that in just its first, second, and last paragraphs:

    1.  This action is brought within the Court's federal question
jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28
U.S.C. § 1367 for redress of Defendants' violations of the Family and Medical
Leave Act (FMLA), 29 U.S.C. § 2601 et seq., Americans with Disabilities Act of
1990 (ADA), 42 U.S.C. § 12101 *et seq.*, as amended by the ADA Amendments
Act of 2008, Section 504 of the Rehabilitation Act of 1973 (Section 504), 29
U.S.C. § 701 *et seq*., New Mexico Human Rights Act (HRA), NMSA § 28-1-1, *et.
seq.*, and New Mexico Whistleblower Protection Act (WPA), NMSA § 10-16C-4
NMSA 1978, *et seq.*

    2.  Defendants' violations arise from a common nucleus of operative
facts, in which they resisted accommodation of, harassed, discriminated, retaliated

against, and terminated Ms. Bradley from employment effective January 27, 2023, and resisted accommodation of, harassed, discriminated, and retaliated against Dr. Alvarez and other staff and students from October 2022 to present, based on serious health/medical condition, disability, and opposition/participation acts in which Plaintiffs asserted their own and others rights as employees, students, and/or persons accessing public accommodations of or receiving services or participating in programs provided by NMHU as a governmental entity and recipient of federal funds.

…

WHEREFORE, Plaintiffs request that the Court order as to their claims for violations of FMLA, ADA, Section 504, HRA, and WPA, that Plaintiffs be awarded damages, including but not limited to unpaid or underpaid wages; back and front pay and benefits; pre- and post-judgment interest as permitted by law; emotional distress; additional liquidated damages in the amount of the same foregoing; punitive damages; costs and reasonable attorneys' fees; damages under NMSA §10-16C-4(A) including actual damages including back pay, reinstatement, two times the amount of back pay, interest on the back pay, special damages including emotional distress and associated medical bills; and the same and further common-law damages pursuant to NMSA §10-16C-4(C); costs and attorney fees pursuant to NMSA §10-16C-4(A); and any such other and further relief as the Courts deems just and proper.

*Complaint* at 1, 45-46. If the *Complaint* contained nothing more, those three paragraphs, alone, would give Defendants fair notice of the grounds for jurisdiction; statutory claims brought (FMLA, ADA, Section, 504, HRA, and WPA); theories of violation (non-accommodation, harassment, discrimination, and retaliation); dates and nature of offending conduct; and specific relief sought. *See* Fed. R. Civ. P. 8(a). But the *Complaint*'s other 143 paragraphs also only clarify—and do not muddy—these opening and closing "short and plain" statements.

## II.     The Complaint Makes Clear Which Claims Are Against Each Defendant.

Defendants feign confusion over which claims apply to each of them. *Memorandum* at 2, 4-5. But the *Complaint* titles Count I, "FMLA Discrimination & Retaliation, Interference with Exercise of Rights (*against all Defendants*);" Count II, "Disability/Serious Health/Medical Condition Discrimination and Retaliation (*against Defendants NMHU and Regents with respect to ADA and Section 504, and against all Defendants with respect to HRA*);" and Count III,

2

"WPA Retaliation (*against Defendants NMHU and Regents*)." *Complaint* at 35, 37, 44.

### III. The Complaint Separately Identifies Actions Taken by Gadsden, Diamond, and Other NMHU/Regents Employees—All of Which It Imputes to NMHU/Regents.

Defendants feign confusion as to "what actions were taken by each of … the defendants." *Memorandum* at 6. But the *Complaint*'s opening fact recitals tie specific allegations of bias, intent, and conduct to Gadsden, Diamond, and other NMHU employees like Compliance Director Ruth Mariampolski ("Mariampolski"), Human Resources Director Denise Montoya ("Montoya"), Dr. Orit Tamir ("Tamir"), and Dr. Ian Williamson ("Williamson"). The Complaint directs allegations of authority, knowledge, and conduct to the specific name of Gadsden 58 times, *Complaint* ¶¶ 7, 25, 27, 31, 46-47, 51, 53, 56, 66-69, 71-73, 77, 79-81, 86-87, 89, 97, 102, 138.m.; Diamond 23 times, *id.* ¶¶ 7, 29, 34, 54, 58, 59, 62, 68, 74; *Montoya 24 times*, *id.* ¶¶ 33-35, 37, 39-43, 55-56, 68, 138.m; Mariampolski 18 times, *id.* ¶¶ 29, 34-40, 43, 49; *Tamir 5 times*, *id.* ¶¶ 69-71; and Williamson 13 times, *id.* ¶¶ 25, 31, 42-43, 47, 51, 54-57. Thus, 141 times, the Complaint directs specific fact allegations to specific persons by name.

The *Complaint* states liability of NMHU/Regents rests on their being the FMLA, ADA, Sec. 504, HRA, and WPA "employer" of Gadsden, Diamond, Mariampolski, Montoya, Tamir, and Williamson as those employees—in their jobs' course and scope—acted or failed to act. *Complaint* ¶¶ 1, 2, 6, 14, 101, 107, 118-119. It cites specific facts and law that such knowledge, motives, and acts of these specific persons should impute to NMHU/Regents to establish they engaged in "intentional discrimination." For example, it alleges Mariampolski (as Compliance Director, the very person NMHU held out as policing such matters) admitted to Bradley that Montoya (the HR Director) was known to be "anti-disability," yet NMHU still let her direct HR functions even after she nominally took another title. *Complaint* ¶34. On such specific facts, the

*Complaint* states the institutional defendants (NMHU/Regents) are liable on agency principles, "Cat's Paw" doctrine, and the "deliberate indifference" standard Tenth Circuit applies under ADA and Section 504 due to the cumulative knowledge, bias, and conduct employees Gadsden, Diamond, Mariampolski, and Montoya acquired and acted upon within the course and scope of their NMHU jobs. *Id.* ¶¶ 17, 34-41, 138.m.

## IV.     The *Complaint*'s Limited References to "Defendants" Do Not Obscure This Clarity.

With such extensive detail in the opening fact recitals of the *Complaint*, it is disingenuous for the *Motion* to claim Plaintiffs "shotgun[ned]" allegations against "Defendants" so often as to leave them at a loss for who "is alleged to have done what to whom." *Memorandum* at 2, 4. As noted, the *Complaint* ties conduct to individuals by name at least 141 times. In comparison, the word "Defendants" appears in the *Complaint* 87 times. And none of these occurrences blurs the clarity the *Complaint* already, elsewhere provides.

Out of 87 occurrences of "Defendants," 17 are in the caption or paragraphs merely summarizing claims, jurisdiction, and venue. *Complaint* ¶¶ 1-3, 40, 48, 63, 64, 66, 99-116. Defendants neither identify—nor should the Court find—any prejudice or anything untoward or confusing in Plaintiffs clustering "Defendants" in such references.

In another 28 occurrences, the *Complaint* generally refers to Plaintiffs' coworkers or their employer as "Defendants"—which in context is correct: NMHU/Regents, Gadsden, and Diamond are all sued/subject to suit as the "employer" under both FMLA and HRA. *Complaint* ¶¶ 6, 12, 15, 20-22, 25-26, 29, 32, 40, 45, 48-50, 54, 56, 61.

Two other "Defendants" uses are not blanket descriptions of them all, but clear and limiting groupings to clarify some Defendants—and not others—meet particular definitions, allegations, or claims. *Complaint* ¶ 6 ("Defendants NMHU and Regents are a 'program or

activity' within the meaning of Section 504"), ¶ 7 ("Defendants Dr. Gadsden and Ms. Diamond are 'persons' and 'employers' within" FMLA and HRA, but not within other statutes).

The remaining 40 times, Plaintiffs reference "Defendants" in the "Cause of Action" section. *Complaint* at 35-46. As already noted, those references must be read as qualified by the title for each Count. And in context, these references are not confusing or deficient.

Count I (containing 10 references to "Defendants") is titled as indeed being "against all Defendants." *Complaint*, 35. But the Complaint makes clear this claim is only by Bradley. *Id*. ¶¶ 118-132. It includes a "short and plain" statement of the FMLA legal claim and theories. *Id*. It makes clear all Defendants can be named under FMLA. *Id.* ¶ 118 (noting Gadsden and Diamond are an "employer" under FMLA, because they acted directly or indirectly in the interest of Bradley's "employer" entity, NMHU, within the meaning of 29 U.S.C § 2611(4)). For further factual basis, Count I also incorporates preceding factual recitations. *Id.* ¶ 117. Thus, the specific supporting facts as to Gadsden are clarified by prior paragraphs that implicate her by name 18 times in specific harassing conduct against Bradley. *Id.* ¶¶ 7, 25, 27, 31, 46-47, 51, 53, 56, 66. Specific supporting facts as to Diamond are clarified by prior paragraphs naming her 20 times regarding her role in Bradley's accommodation and FMLA requests and in terminating Bradley. *Id.* ¶¶ 7, 29, 34, 54, 58-59, 62. And the facts as to NMHU/Regents liability are, again, the same as are directed against Gadsden and Diamond, in addition to the agency principles and cases Plaintiffs cite in the Complaint.

Count II (containing 24 references to "Defendants") is "against Defendants NMHU and Regents with respect to ADA and Section 504, and against all Defendants with respect to HRA." *Id*. at 37. By its title, Count II makes clear the ADA and Section 504 claims are only against NMHU/Regents for conduct previously specified of their employees. By the same, it makes

clear Gadsden and Diamond are not individually sued under ADA and Section 504. Thus

narrowed, Count II includes a "short and plain" statement of the ADA, Section 504, and HRA

legal claim and theories. *Id*. ¶¶ 135-39. Again, for further factual basis, Count II incorporates

preceding factual recitations. *Id.* ¶ 134. Thus, the HRA claims against Gadsden and Diamond

are—again—specifically clarified by prior paragraphs implicating Gadsden by name in conduct

58 times, *id*. ¶¶ 7, 25, 27, 31, 46-47, 51, 53, 56, 66-73, 77, 79-81, 86-87, 89, 97, 102, and 138.m.;

and Diamond by name in specific conduct 23 times, *id*. ¶¶ 7, 29, 34, 54, 58-59, 62, 68, and 74.

<u>Further, 20 of these 24 references to "Defendants" occur in mere summaries of applicable</u>

<u>"pretext" proofs recognized by the Tenth Circuit</u>, with Plaintiffs merely noting these pretext

proofs apply in the present cases based on the specific facts already recited. *See id*., ¶ 138

(including subparagraphs a., b., c., d., e., f., g., h., i., j., k., l., and m.). These, too, cannot

plausibly cause any sincere confusion on the part of Defendants.

 <u>Count III, the WPA claim (containing six references to "Defendants"), is only "against</u>

<u>Defendants NMHU and Regents."</u> *Complaint* at 44. Any WPA claim asserts Plaintiffs as public

employees suffered retaliation for having reported and/or opposed unlawful behavior. It is self-

evident, this claim builds on prior allegation of ADA, Section 504, and HRA violations and

reports; detailed allegations of NMHU employees' knowledge, discriminatory motive and act or

inactions; and the resulting inference of institutionalized intent to discriminate/retaliate. But at

Count III, Plaintiffs also provides a "short and plain" statement of just that:

 140. Plaintiffs repeat and reallege the preceding allegations as though again
herein fully set forth.

 141. Plaintiffs by the above complaints and opposition to Defendants' ADA,
Section 504, and HRA violations:

  A. communicate[d] to the public employer or a third party
information about an action or a failure to act that the public employee

believes in good faith constitutes an unlawful or improper act;

B.      provide[d] information to, or testifie[d] before, a public body as part of an investigation, hearing or inquiry into an unlawful or improper act; and

C.      object[ed] to or refuse[d] to participate in an activity, policy or practice that constitutes an unlawful or improper act.

*See* §10-16C-2 (C)(3) NMSA 1978.

142.    The disability-related conduct of Defendants upon which Plaintiffs advocated, reported, and complained constituted reasonably-perceived "unlawful or improper acts" within the meaning of WPA, because they involved "a practice, procedure, action or failure to act on the part of a public employer" that:

(1)      violates a federal law, a federal regulation, a state law, a state administrative rule or a law of any political subdivision of the state;

(2)      constitutes malfeasance in public office; or

(3)      constitutes gross mismanagement, a waste of funds, an abuse of authority or a substantial and specific danger to the public.

*See* §10-16C-2 (E) NMSA 1978.

143.    Defendants took retaliatory actions against Plaintiffs for these reports in the form of a hostile work environment, demotions, actual and/or constructive termination of Plaintiffs' employment. *Lerma v. N.M. Dep't of Corrections*, 2024-NMCA-011, *cert. granted* ("Our Legislature has defined 'retaliatory action' broadly as 'any discriminatory or adverse employment action against a public employee in the terms and conditions of public employment'") (citing § 10-16C-2(D) NMSA); *Dart v. Westall*, 2018-NMCA-061, ¶ 23, 428 P.3d 292 (concluding the evidence sufficed to support a jury finding of "retaliatory action" under the NMWPA where the defendant reassigned the plaintiff to a new division, "created a hostile work environment, made humiliating comments about him to his colleagues, issued him a substandard work vehicle, and required him to surrender his key to the forensic lab and cease investigating his caseload of crimes against children").

144.    On such bases, Defendants committed whistleblower retaliation in violation of NMSA § 10-16C-3.

145.    Under NMSA § 10-16C-4, Defendants are liable to Plaintiffs for actual damages, including but not limited to back pay, front pay, lost employee benefits including but not limited to retirement benefits under the Public Employees Retirement Association, and emotional distress, reinstatement to the position and seniority status Plaintiffs would have had but for the violation, two times the amount of back pay with interest on the back pay, compensation for special damages including emotional distress sustained as a result of the violation, and litigation costs and reasonable attorney fees.

*Complaint* at 44-45.

With such combined clarity, it defies reason for Defendants to claim NMHU and

Regents—the only two Defendants implicated in Count III—could not make heads or tails of

these allegations or prepare simple, direct admissions or denials as required by Rule 8(b).

Likewise, it defies reason for any of the Defendants to claim the *Complaint*'s limited use

of the word "Defendants" has confused or undermined their ability to prepare simple, direct

admissions or denials to each numbered paragraph of the Complaint as required by Rule 8(b).

**V.    For these Same Reasons, Defendants Have Not Shown Good Grounds under Rule 12(f) to Move for a More Definite Statement.**

In closing their *Memorandum*, Defendants simply recast the same criticisms of the

*Complaint* under Rule 8 as a Rule 12(f) motion for more definite statement.  *Memorandum* at 6.

But repackaging those arguments under a new Rule does not improve or save them.  As already

noted, the *Complaint* is, in fact, clear and unambiguous as to the causes of action and specific

conduct alleged as to each of the two individual Defendants, Gadsden and Diamon, and the two

institutional Defendants, NMHU and Regents (which are essentially named and serve as one).

As also discussed, the *Complaint*'s limited usage of "Defendants" is nowhere near as extensive

or confusing as Defendants suggest.  And neither Rule 12(e) nor the one case that Defendants

cite as applying it would counsel that this *Complaint* need be more definitely stated.  *See*

*Memorandum* at 6 (citing *Moya v. Schollenbarger*, 465 F.3d 444, 446 (10th Cir. 2006)).

Absent from Defendants' *Memorandum* is any acknowledgement of working standards

for a Rule 12(e) motion.  The federal courts disfavor motions for a more definite statement in

connection with the liberal discovery provided under the federal rules, and they grant such

motions only when the complaint is so vague or ambiguous that a defendant cannot reasonably

determine the issues requiring a response. *Martinez v. Naranjo*, 328 F.R.D. 581, 593 (D.N.M. 2018) (Browning, J.) (citing *Peterson v. Brownlee*, 314 F. Supp. 2d 1150, 1155 (D. Kan. 2004) (Lungstrum, J.); *Shaffer v. Eden*, 209 F.R.D. 460, 464 (D. Kan. 2002) (Murguia, J.).  A motion for a more definite statement is used to provide a remedy only for an unintelligible pleading, rather than to correct inaccurate assertions, add precision, or flesh out a lack of detail. *See Serna v. Webster*, No. CIV 17-0020 JB/WPL, 2017 WL 4386359, at *42 (D.N.M. Sept. 30, 2017) (Browning, J.) (granting a motion for a more definite statement where the "[c]omplaint, as drafted, [was] incomprehensible as to" a defendant); *Crespin v. City of Espanola*, No. CIV 11-0913 JB/KBM, 2012 WL 592880, at *3 (D.N.M. Feb. 10, 2012) (Browning, J.) (granting motion for a more definite statement when the plaintiff did "not give sufficient notice of the legal claims he [was] attempting to bring"); *Coffey v. McKinley Cnty.*, No. CIV 09-0028, 2009 WL 3208209, at *2 (D.N.M. Sept. 11, 2009) (Browning, J.) (denying a motion for a more definite statement where the Court and parties clarified the legal basis for a claim during the motion hearing); *Bannister v. Coronado Fin., Inc.*, No. CIV 07-620, 2008 WL 2323518, at *10 (D.N.M. Jan. 17, 2008) (Browning, J.) (denying motion for a more definite statement where defendant did not identify "anything specific that she [could not] discern from the Complaint" and ordering the pro se plaintiff to amend the Complaint would help neither the defendant nor the Court); *Frazier v. Se. Penn. Transp. Auth.*, 868 F. Supp. 757, 763 (E.D. Pa. 1994) (Joyner, J.) (denying motion for a more definite statement where complaint "affords [the defendant] with notice as to the nature and basis of [the plaintiff's] claims").

Against such authorities, Defendants have offered only a misleading characterization of *Moya*, *supra*.  Despite Defendants' characterization, *Moya* makes scant, passing reference to an order for a more definite statement.  465 F.3d at 446.  Even as skimmed in its "background," the

Rule 12(e) order in *Moya* was not solely or substantially based on the detail Defendants claim. The trial court's order for more definite statement was—in the Court's brief statement—because the plaintiff had not clearly pled "(1) … an adverse employment action, [or] (2) how the timing of [his] speech related to the time of the alleged adverse action…." *Id*. Regardless, that order was not the subject of appeal. *Id*. The Tenth Circuit set out no analysis or review of that order's grounds or propriety. *Id*. The issue on appeal was a later Rule 12(b)(6) motion. 465 F.3d at 447. The 12(b)(6) motion raised a qualified-immunity defense. *Id*. Based on *that* defense, the trial court dismissed the complaint *without prejudice*. 465 F.3d at 448. It was only that decision, on that basis, which the Tenth Circuit reviewed on appeal. *Id*. *Moya*'s actual holding states, "Because Mr. Moya has failed to allege facts showing that Defendants took an adverse employment action against him, he has failed to satisfy the *Pickering* test. Therefore, his allegations are insufficient to survive Defendants' motion to dismiss." 465 F.3d at 457-58. Thus it did not rule on whether or why the prior order for more definite statement was correct.

Even if *Moya* could be read as generally condoning an order for more definite statement, it would only be on its specific facts. And those do not resemble Plaintiffs' *Complaint*. Neither Plaintiff here failed to plead an adverse employment action. And neither Plaintiff failed to plead the timing of such adverse action in relation to her having invoked rights or engaged in protected participation or opposition acts under FMLA, ADA, Section 504, or HRA.

Plaintiff Bradley specifies she was terminated by Diamond on January 27, 2023. *Complaint* at ¶59. She specifies this was mere days before she would attain FMLA eligibility for the medical need of which she had recently notified Diamond. *Id*. ¶60. She specifies this all occurred in her one year of employment as "Coordinator of Disability Services." *Id*. ¶13. She specifies the primary duties of her job were facilitating staff and student ADA, Section 504, and

HRA needs.  *Id.*  And she specifies that in her brief employment, she experienced a continuing violation of being harassed, pressured, and threatened/warned by Gadsden, Mariampolski, and Williamson soon after occasions on which she invoked or advocated her own and other faculty and students' FMLA, ADA, Section 504, and HRA rights.  *Id.* ¶¶ 25, 27, 31, 34, 35, 37, 41-54.

Plaintiff Alvarez also specifies adverse employment actions.  These include a pattern of open ADA resistance by Tamir, *id.* ¶ 70; harassment, job interference, negative evaluations, elimination of journal-editing duties, and reduction in work and associated pay all directly brought about by Gadsden, *id.* ¶¶ 70-72 (including subparagraphs a.- g.); and NMHU/Regents' months-long failure to accommodate or participate in ADA interactive process despite notices and knowledge being given to NMHU Provost Roxanne Gonzales-Walker, Interim Dean Peter Linder, Past Dean Brandon Kemper, and General Counsel Patricia Ives, *id.* ¶¶ 74-84.  Alvarez also notes she filed a Charge of Discrimination with New Mexico Human Rights Bureau and Equal Employment Opportunity Commission on February 11, 2024, while providing Defendants' prelitigation counsel, Ms. Ives, a simultaneous copy.  *Id.* ¶ 92.  But the same harassment (by Gadsden) and failures to accommodate (by all Defendants) continued and even increased, with Alvarez eventually feeling compelled to resign her (partial) duties as Program Coordinator for the Public Affairs-Applied Sociology MA program.  *Id.* ¶¶ 93-97.

Further, the Complaint alleges Plaintiffs, combined, suffered "actual or constructive termination of employment."  *Id.* ¶ 135.  And since Defendants are aware they actually terminated Bradley, it inescapably follows that Plaintiffs are alleging "constructive termination" of Alvarez's duties, such as the Program Coordinator role she resigned.

With the *Complaint*'s providing such detail and clarity, this is not a case where "defendant can only guess as to what conduct or contracts an allegation refers, or the complaint

is unintelligible." *EMC Mortgage LLC v. Pulte Mortgage LLC*, 2020 WL 836521, *11 (D. Colo.). The Court will not grant a Rule 12(e) motion "merely because the pleading lacks detail; rather, the omitted but desired details must be reasonably necessary to enable a responsive pleading in the form of a denial or admission." *Airtex Mfg. LLLP v. Boneso Brothers Constr, Inc.*, 2019 WL 6715411, *1 (D. Kan.) (citations omitted).

Defendants' criticisms of the *Complaint* do not establish any such grounds for Rule 12(e) relief. In fact, Defendants' demands devolve into absurd demands for idiosyncratic convenience, having nothing to do with fair notice or compliance under Rule 8 or 12. [1] <u>Ultimately, Defendants claim Plaintiffs must plead the *Complaint* in some way to avoid any Defendant needing to "file a separate answer" or causing any "joint Answer that sets forth a separate response for each Defendant to ever numbered paragraph."</u> *Memorandum* at 5. <u>But the supposed dread scenarios Defendants depict are, in truth, merely what each defendant owes a plaintiff—a direct admission or denial to each allegation in a complaint.</u> *See* Fed. R. Civ. P. 8(b). Defendants cite no case or reason the gold standard is for Defendants to be assured a chance to file a single, joint, opaque answer. But on the bright side, Defendants' confession of their true objective makes it even more clear that none of this is about the *Complaint*'s actual Rule 8 or Rule 12 sufficiency.

---

[1] Defendants claim the *Complaint* does not "reference" Exhibit A. *Memorandum* at 2. But in fact, it does so at length. *Complaint* ¶¶ 36-41, 43. Defendants claim captioning NMHU "a/k/a Normal University" is "not proper." *Memorandum* at 1-2, n. 1. But the statute they cite, itself, allows NMHU's original name, "New Mexico Normal University," still to apply. NMSA § 21-3-2. They claim NMSA Section 21-3-4 forbids suits in naming "NMHU" rather than Regents. *Memorandum* at 1-2, n. 1. But that statute states no such rule. *See* NMSA § 21-3-4. And a simple search of caselaw finds NMHU suing in its own name for 30+ years. *See, e.g., Highlands Univ. v. Baca*, 1991-NMCA-099, 113 N.M. 175, 824 P.2d 315 (Ct. App. 1991); *Highlands Univ. v. Makwa Builders, LLC*, A-1-CA-35125 (N.M. App. January 29, 2018) (unpublished).

## VI.    Defendants Have Not Met Their Burden or Stated With Particularity The Grounds for a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim.

Almost imperceptibly, Defendants request a Rule 12(b)(6) dismissal only in passing. *Memorandum* at 5.  But their one-sentence request violates Rule 7.  Fed. R. Civ. P. 7(b)(1)(B) (requiring a motion's grounds to be stated "with particularity").  The particularity requirement of Rule 7 ensures the court and adversary receive ample notice of the relief requested and the moving party's reasoning, so both fully understand the motion and the adversary has meaningful opportunity to respond.  *See Rodriguez-Miranda v. Benin*, 829 F.3d 29, 39 (1st Cir. 2016); *Nordock, Inc. v. Sys. Inc.*, 803 F.3d 1344, 1359-60 (Fed. Cir. 2015).  And that intent is frustrated where, as here, Defendants' 12(b)(6) "argument" is limited to one sentence.  *Memorandum* at 5.  Courts deny such a brief "motion" under Rule 7(b)(1)(B).  *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1282-83 (10th Cir. 2021) ("Because we do not recognize Plaintiffs' single sentence as a cognizable motion, the district court did not abuse its discretion in denying that request."); *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018) (comment embedded in opposition brief); *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630-31 (4th Cir. 2008) (request in footnote and final sentence).

Such a terse request also fails to meet the movant's burden under Rule 12(b)(6).  *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1125 (10th Cir. 1994) (Rules "erect a powerful presumption against rejecting pleadings for failure to state a claim"); Charles Alan Wright & Arthur R. Miller, *5A Federal Practice and Procedure* § 1357 (3d ed. 2019) ("All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists.").  The *Memorandum* does not cite or discuss any statutory term, *prima facie* element, or case disposing of FMLA, ADA, Section 504, HRA, or WPA claims.  It does not

identify a single FMLA, ADA, Section 504, HRA, or WPA element that is insufficiently pled or "factually enhanced."  It in no way shifts the burden to Plaintiffs to defend the detailed pleading of any elements of their claims.  *See Brever*, *supra*; *Wright & Miller*, *supra*; *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) (denying 12(b)(6) motion as deficient, even though it went unopposed); *Raymond v. Avectus Healthcare Sols., LLC*, 859 F.3d 381, 383 (6th Cir. 2017).

Even so, in its "Summary of Claims and Key Fact," *see Complaint* at 1, the *Complaint* recites detailed facts stating clear and plausible basis for meeting each *prima facie* element of their FMLA, ADA, Section 504, HRA, and WPA claims.  *Complaint* at 4-32.  Pages 4 to 21 recite facts of Plaintiff Bradley's employment, protected participation/opposition activity, harassment, adverse employment actions, and (jurisdictional prerequisite) exhaustion of administrative remedies.   Pages 21 to 32 recite the same for Plaintiff Alvarez.

In its "Causes of Action," the *Complaint* also recites each *prima facie* element for the FMLA, ADA, Section 504, HRA, and WPA claims in issue.  *Complaint* at 37-45.  Beyond such a "short and plain" statement of each such element, the *Complaint* cites statutes, regulations, and cases clarifying those legal burdens and how, factually, they may be met.  *Id*.  In summarizing paragraphs, the *Complaint* references how prior factual allegations meet each such element.  *Id*. Count I discusses how each FMLA *prima facie* element is met in the claim asserted by Bradley, alone.  *Complaint* at 35-37.  Count II discusses how Alvarez and Bradley meet each ADA and Section 504 element against NMHU/Regents and each HRA element against NMHU/Regents, Gadsden, and Diamond.  *Complaint* at 37-44.  And Count III discusses how Alvarez and Bradley meet each element for WPA Retaliation against NMHU/Regents.  *Complaint* at 44-45.

In summary with respect to Defendants' offhand Rule 12(b)(6) request, the thrust of Defendants' motion is not a valid Rule 12(b)(6) motion.  Defendants have by no means met their

Rule 7 burden to state such grounds with particularity. Defendants have also not met their initial burden of proof for a Rule 12(b)(6) motion. But if the Court should find any further response is required of Plaintiffs in this instance, Plaintiffs incorporate by reference their *Complaint*, together with the factual proofs and supporting points and authorities of law therein set forth.

## VII.    Defendants Have Not Filed or Supported a Proper Rule 12(f) Motion to "Strike" Any of the Complaint's Supposed "Unnecessary" Facts, Law, or Length.

After merely insinuating the *Complaint* fails to plead some unspecified, essential facts, Defendants also suggest the Court must order Plaintiffs to cull other, unspecified details. *Memorandum* at 2 (claiming "vast number of the paragraphs" contain "unnecessarily complex" factual allegations), 3 (claiming "[m]any paragraphs" contain "unnecessary details" and "unnecessar[y] … case law"), and 4 (complaining of the "sheer volume of information" alleged). But they do not properly make this request, either.

Defendants did not file a Rule 12(f) motion to strike or attempt to show any particular paragraph of the *Complaint* is "redundant, immaterial, impertinent, or scandalous." *See* Fed. R. Civ. P. 12(f). Even if they had, this Court has noted Rule 12(f) motions are often "purely cosmetic" or "time wasters." *Payne v. Tri-State Careflight, LLC*, 327 F.R.D. 433, 445 (D.N.M. 2018) (quoting 5C C. Wright & A. Miller, Federal Practice & Procedure § 1382, at 433-36 (3d. ed. 2004) (footnotes omitted)). "[T]hey should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy." *Id*.

As discussed, the extensive fact sections are not "unrelated." There are two Plaintiffs. More than half the *Complaint* consists of a detailed workplace chronology for each. Bradley's occupies *Complaint* pages 4 to 21. Alvarez's occupies pages *Complaint* pages 21 to 32. The two Plaintiffs average a fact summary of 14 pages each. And it is doubtful any Court would find

a single-plaintiff discrimination complaint of just such length to be extraordinary or "prolix."

Likewise, aside from each Plaintiff's workplace chronology of facts, the remaining paragraphs and pages provide a logically organized statement and discussion of each cause of action under each statute. While there are still two Plaintiffs to address, these contextualized discussions of black-letter law average just 2 1/2 pages per statute. *See Complaint* at 33-35 (discussing all claims); 35-37 (FMLA); 37-44 (ADA, Section 504, and HRA); 44-45 (WPA).

Further, as expounded herein, the separate Bradley and Alvarez chronologies—as well as the organized statements of Causes of Action, detailing law and legal conclusions—are clearly permissible, and in most instances, essential, clarifications of the "short and plain statements" of these two Plaintiffs' separate claims under five statutes against the four Defendants.

## VIII. Considering Plaintiff's Need to Plead Factual "Plausibility" of Each Claim under *Iqbal*/*Twombly*, the Complaint is Not Excessive or "Prolix."

Given the separate statutory claims each Plaintiff makes, their separate fact chronologies are perfectly typical of the "factual enhancement" that is permitted, if not also required, to show "plausibility" of these claims under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Since *Iqbal*/*Twombly*, the Tenth Circuit has found the required specificity of a complaint "will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). More complex claims require more detail. *Id*. *Iqbal* and *Twombly* eschew pleadings relying heavily on "conclusory" allegations. Specifically, "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 557 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Nor will a complaint that tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*.

As an aside here, Defendants apparently require proof that pleadings are allowed to

reference law.  Defendants specifically scoff at the *Complaint* because it "recites case law." *Motion* at 3-4.  But they cite no authority against this.  The Court regularly sees complaints naming statutes and common-law causes of action.  Defendants do not explain why pinpoint citing a statute or case is more scandalous than summarizing its black-letter law.  Nor do they explain why case law is more scandalous than statutes.  And weighing against all such notions, *Iqbal* clearly recognizes, "legal conclusions can provide the framework of a complaint."   556 U.S. at 679.  The added point of *Iqbal* is only that those legal conclusions "must be supported by factual allegations."  *Id*.

If Defendants' *Motion* touches upon these issues at all, it merely gripes the *Complaint* has too much factual enhancement.  But that is not a recognized basis to dismiss under Rule 8(a) and (e) or Rule 12(b)(6).  Given the moderate complexity of this case, it is simply false to gripe the *Complaint* is "long."  *Iqbal* specifically applied the *Twombly* "plausibility" standard of pleading to "discrimination" cases.  556 U.S. at 679.  It addressed the considerable care a discrimination plaintiff can or should take add supporting factual detail to "nudge" such a claim "across the line from conceivable to plausible."  *Id*.  And it is that very concern that justified pleading the *Complaint* with as much detail of facts and law as Plaintiffs did.

## IX.    Including FMLA, ADA, Section 504, HRA, and WPA Claims Is Not Radical.

FMLA, ADA, Section 504, and HRA are not fringe theories.  Combining them in a single complaint is not controversial.  Their application is in no way dubious when employees allege specific facts showing they were harassed and retaliated against for medical conditions, disabilities, and related opposition/participation acts.  In such situations, FMLA, ADA, Section 504, and HRA all clearly apply, even if they overlap.  Further, when such retaliation befalls a public employee, WPA clearly applies.  And with exception of WPA (made law in 2010), these

are long-established remedies the Court has been applying to just these situations, in thousands

of cases, for the 30+ years FMLA, ADA, Section 504, and HRA have all been codified.

In turn, it was appropriate for Plaintiffs to include all five of the statutory claims in their

"short and plain" statement of claims in paragraphs 1 and 2 of the *Complaint*. It was necessary

or permissible under Rules 8 and 12 for the *Complaint* to expound on all five statutes to give

more specific notice to Defendants on each such claim. And it was necessary or permissible for

the *Complaint* to provide considerable factual detail behind as to all five statutes, as to all four

Defendants, to show factual "plausibility" of each of Plaintiff's claims.[2]

## X.     Rule 8 Altogether Does Not Require More or Less Detail in the *Complaint*.

"Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). The *Motion*'s

tortured arguments are not a "just" reading of the *Complaint*. Nothing in or about Rule 8 creates

the narrow Goldilocks zone for complaint length that Defendants suggest. The *Motion* argues

the *Complaint* is too long *and* too short. But the *Complaint* is clear, organized, and specific on

its facts and law. Its length and detail are appropriate for the number of plaintiffs, defendants,

claims, and the "plausibility" standard of *Iqbal*/*Twombly*. Straining to argue otherwise, the

*Motion* only ignores *Iqbal*/*Twombly*, glosses the *Complaint*, and avoids confronting its actual

organization, specific allegations of germane facts, and specific citations to controlling law.

Rule 8 affirms Plaintiffs can include all claims in their *Complaint*. Fed. R. Civ. P. 8(d)(3)

("A party may state as many separate claims or defenses as it has, regardless of consistency."). It

eschews the "technical form" Defendants are trying to impose with their *Motion*. Fed. R. Civ. P.

8(d)(1) ("No technical form is required."). And none of the decisions Defendants cite as

---

[2]     *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557 (establishing "plausibility" test).

supposed support for their interpretation of Rule 8 bear out the result that Defendants here seek.

## XI.     The Motion's Rule 8(a) Authorities are Inapposite.

Defendants attempt to draw a false equivalence between the *Complaint* and other cases with pleadings that never specify a cause of action or supporting facts. *Memorandum* at 3 (citing *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007)) and 4 (citing *Robbins v. Oklahoma ex rel. Dep't of Human Servs*, 519 F.3d 1242, 1250 (10th Cir. 2008)). But a cursory review of those cases shows they are inapplicable. Plaintiffs' *Complaint* in no way resembles the pleadings—or suffers the results—of either *Mann* or *Robbins*.

In *Mann*, the trial court's actual decision was a dismissal of the complaint for lack of subject matter jurisdiction. 477 F.3d at 1148. The *pro se* plaintiff's federal complaint sought to enjoin a state court's separate probate case, appointing a guardian and conservator for her father. *Id*. The trial court found the *Rooker-Feldman* doctrine barred it from reviewing the state probate orders. 477 F.3d at 1145. The Tenth Circuit affirmed on this basis and found any monetary damages implied in plaintiff's complaint were "inextricably intertwined with the probate court judgments" and thus also barred by the *Rooker-Feldman* doctrine. 477 F.3d at 1147. The court noted that other claims conceivably scattered and unnamed in the complaint could also have been dismissed under Rule 8(a). 477 F.3d at 1148. But despite the complaint being 99 single-spaced pages, the court found its "main problem" under Rule 8 was not sheer length or "prolixity." *Id*. It was instead that plaintiff "curiously eschewed the traditional pleading style characterized by a … recitation of the facts followed by claims for relief." *Id*. And the complaint had only vaguely labeled one "claim for relief," which itself never "identifies a concrete legal theory." *Id*.

Here, in contrast, Plaintiffs' *Complaint* **does** employ the traditional pleading style of a recitation of facts followed by separate, enumerated, named causes of action. As already noted,

each cause of action specifically identifies the Defendant(s) sued under each theory. Pages 1 to 4 and 33 to 35 identify the parties, capacity to sue and be sued, causes of action, remedial statutes, jurisdiction (both federal question and ancillary/supplemental), and venue. Pages 4 to 21 recite facts of Bradley's employment, protected participation/opposition activity, harassment, adverse employment actions, and (jurisdictional prerequisite) exhaustion of administrative remedies. Pages 21 to 32 recite the same for Alvarez. Pages 35 to 37 specify Count I is by Bradley, alone, against all Defendants under FMLA. *Complaint* at 35 ("Count I"). Pages 37 to 44 specify Count II is stated by both Alvarez and Bradley against "NMHU and Regents with respect to ADA and Section 504" and against "all defendants with respect to HRA." *Complaint* at 37 ("Count II"). Pages 44 to 45 specify Count III is stated by both Alvarez and Bradley for "WPA Retaliation" against "NMHU and Regents." *Complaint* at 44 ("Count II"). And pages 45 to 46 are a concise Prayer for Relief and Jury Demand.

In further distinction of *Mann*, Plaintiffs' *combined*, *double-spaced Complaint* numbers just 46 pages. They essentially each state their claims in 23 double-spaced pages. Defendants feign exasperation at this length. But for each Plaintiff, this is effectively just 1/8th the length of the sole plaintiff's 99-page, single-spaced complaint in *Mann*. *See* 477 F.3d at 1147. The *Mann* complaint essentially spent 198 pages (had they been double-spaced) on one plaintiff's one "claim for relief" to enjoin a probate court. In addition, the two-plaintiff, Bradley and Alvarez *Complaint* specifies 24 causes of action in their combined 46 pages, averaging less than two pages per claim. Bradley states 14 counts: under FMLA against four defendants, ADA against two defendants, Section 504 against two defendants, HRA against four defendants, and WPA against two defendants. Alvarez states 10 counts: under ADA against two defendants, Section 504 against two defendants, HRA against four defendants, and WPA against two defendants.

Thus, even if Rule 8 were somehow read to counsel a precise pages-per-count limit, any such reasonable limit would not punish a plaintiff averaging less than two pages per cause of action.

For the same reasons, the *Complaint* has none of the deficiencies found in *Robbins*. In *Robbins*, plaintiffs were two parents of an infant who died in a state-subsidized daycare. 519 F.3d at 1246. Their complaint sought damages and relief under 42 U.S.C. § 1983 for alleged violations of the deceased infant's constitutional rights and various torts. *Id*. The trial court granted a Rule 12(b)(6) motion in part, dismissing some defendants under qualified immunity. *Id*. Just two months later, the Supreme Court handed down *Twombly*. *See Robbins*, 519 F.3d at 1247. The *Robbins* appeal, in turn, was focused on the new *Twombly* "plausibility" standard for Rule 12(b)(6) motions. *See id*. The Tenth Circuit reversed the denial of dismissal as to the remaining defendants and remanded with instructions to dismiss the complaint as to all defendants. 519 F.3d at 1254. The court did so primarily based on qualified immunity and the *Iqbal/Twombly* standard to test a complaint for "plausibility." 519 F.3d at 1253.[3] The court in *dicta* also discussed Rule 8. *Id*. But here again, its Rule 8 concern was not that the complaint was lengthy; the opinion, in fact, references neither "length" nor "pages." *Id*. To the contrary, the court was concerned with the complaint's brevity, lack of factual allegations, and fact that it contained "almost no allegations that are neither conclusory nor vacuous." *Id*. Thus, the Tenth Circuit noted the "more serious notice problem" under Rule 8 was that:

> plaintiffs' open-ended allegations provide no suggestion as to what the grounds for an equal protection violation might be: whether Ms. McKinney is alleged to have treated Native American children in her care differently from other children; whether DHS is alleged to have refused to investigate complaints against Ms. McKinney because her clientele were all or mostly Native American; whether DHS is alleged to have treated Native American children differently by placing them with Ms. McKinney, a known child abuser; or some other imaginable set of

---

[3]     *See Iqbal*, *supra*; *Twombly*, *supra*.

facts.

519 F.3d at 1253.  In other words, the court found the plaintiffs had not included enough specific factual allegations to demonstrate discrimination/differential treatment as between the plaintiffs' decedent and other similarly situated children.  *Id.*  And that is of no concern with the *Complaint*.

## XII.    More Similar Authority Shows This *Complaint* Is Perfectly Fine Under Rule 8.

Defendants' Motion suggests Rule 8's "short and plain" phrase imposes a Procrustean page limit a complaint may never exceed, regardless of its number of parties and claims.  But that is not the letter, spirit, or effect of Rule 8.  As noted, that is not how the Tenth Circuit applied Rule 8 in *Mann*.  The Complaint here is not like the pleading under review in *Mann*. Instead, Plaintiffs' Complaint is more like another civil rights pleading recently reviewed—under a similar Rule 8 motion—by a neighboring District Court.  In *Pittman v. King*, the United States District Court for the District of Colorado wrote:

> Defendants protest that Plaintiff has added 100 paragraphs of new allegations, and the proposed pleading totals 517 paragraphs over 65 pages. But "verbosity or length is not by itself a basis for dismissing a complaint." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008)). And the proper length of a pleading "cannot be defined with any great precision." *Id.* at 1059 (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed. 2010)). Rather, a complaint violates Rule 8 when it is "virtually impossible to understand" or "completely lacking in clarity and intelligibility." *See Mitchell v. City of Colo. Springs, Colo.*, 194 F. App'x 497, 498 (10th Cir. 2006). The Court has reviewed the proposed First Amended Civil Rights Complaint and although it is long, it is organized, intelligible, and gives Defendants fair notice of Plaintiff's claims.

*Pittman v. King*, Case No. 20-cv-03371 RMR-NRN (D. Co. October 3, 2023) (denying motion to dismiss a civil rights complaint under Rule 8(a)).

It also bears noting, *Pittman* involved a single civil-right plaintiff filing a complaint totaling 65 pages.  This case involves two Plaintiffs whose combined *Complaint* is just 46 pages.

22

And in turn, Plaintiff's Complaint here is almost twice as concise as the pleading *Pittman* approved and allowed to stand.

A district court may not dismiss a complaint under rule 8(a) "solely based on excessive length[.]" *Hearns*, 530 F.3d at 1131-32 (collecting cases). Rule 8 dismissal is appropriate only when a complaint is "replete with redundancy and largely irrelevant" allegations or is "confusing and conclusory." *Id.* at 1132 (internal citations omitted). In *Hearns*, the Ninth Circuit found Rule 8 dismissal is inappropriate where ***"[t]he complaint is logically organized, divided into a description of the parties, a chronological factual background, and a presentation of enumerated legal claims, each of which lists the liable Defendants and legal basis therefor***." *Id.* (emphasis added). In the present case, the exact same can be said of Plaintiffs' *Complaint*. Here, just like in *Hearns*, it can aptly be said that "the Defendants should have no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss." 530 F.3d at 1132. But Defendants have done neither.

**XIII.** **Plaintiff's Detailed Account of NMHU's Broad Noncompliance Culture—Harming Plaintiffs and Other Staff and Students—is Also Permissible and Apt to Plead "Intentional Discrimination" Under the *Iqbal/Twombly* Standard of "Plausibility."**

In *Brooks v. Mentor Worldwide LLC*, the Tenth Circuit summarized:

We use the *Iqbal/Twombly* standard to determine whether Plaintiffs have stated a plausible claim. *Brown v. Montoya*, 662 F.3d 1152, 1162-63 (10th Cir. 2011). In applying this standard, we take Plaintiffs' well-pleaded facts as true, view them in the light most favorable to Plaintiffs, and draw all reasonable inferences from the facts in favor of Plaintiffs. *Id.* at 1162. A plausible claim includes facts from which we may reasonably infer Defendant's liability. *Id.* at 1163. Plaintiffs must nudge the claim across the line from conceivable or speculative to plausible. Id. Allegations that are "'merely consistent with' a defendant's liability" stop short of that line. [*Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 557]. Labels, conclusions, formulaic recitations of elements, and naked assertions will not suffice. *Id.* An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement. *Kellum v. Mares*, 657 Fed. App'x 763, 770 (10th Cir. 2016) (unpublished) (citing Black's Law

Dictionary (10th ed. 2014)). Conclusory allegations are "not entitled to the assumption of truth." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). In fact, we disregard conclusory statements and look to the remaining factual allegations to see whether Plaintiffs have stated a plausible claim. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). We must draw on our experience and common sense in evaluating the plausibility of a claim. *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. The degree of specificity needed to establish plausibility and provide fair notice depends on the context and the type of case. *Id.*; *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

985 F.3d 1272, 1281 (10th Cir. 2021).

With these standards in mind, it also bears note that Plaintiffs allege and factually detail an institutional intent on the part of NMHU to discriminate against both employed faculty and enrolled students. And among others, the *Complaint* specifically invokes the following standard:

The United States Court of Appeals for the Tenth Circuit has held a defendant engages in intentional disability-based discrimination if it is "deliberately indifferent" to ADA and Section 504 requirements. *See J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1298 & n.6 (10th Cir. 2016) (applying deliberate-indifference standard to a Title II damages claim); *Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (same as to a Section 504 damages claim). A plaintiff need not show the defendant acted with "ill will or animosity toward the disabled person." *Barber*, 562 F.3d at 1228. Rather, a plaintiff can simply demonstrate: "(1) [the defendant acted with] 'knowledge that a harm to a federally protected right is substantially likely,' and (2) 'a failure to act upon that . . . likelihood.'" *Id.* at 1229 (quoting *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).

*Complaint* ¶ 17. In turn, the breadth of Bradley's and Alvarez's allegations of harassment, non-accommodation, and noncompliance affecting both themselves, each other, and other staff and students is far from "unnecessary." It is central to their claims and proof intentional disability-based discrimination. And it is again, clearly necessary or permissible under *Iqbal/Twombly*.

## CONCLUSION

For these reasons, Plaintiffs request the Court deny *Defendants' Motion to Dismiss and Alternatively for a More Definite Statement* [Doc. 6] and grant other and further proper relief.

Filed this 2nd day of August, 2024.

Respectfully Submitted,

*-/s/ - Trent A. Howell –*
*Electronically filed & signed-*
Attorney Trent A. Howell
P.O. Box 2304
Santa Fe, New Mexico  87504
trent@trentahowell.com
(505) 919-9158

*Counsel for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

 I hereby certify that a copy of the foregoing document was served on all counsel of record in this case via ECF/email on August 2, 2024.

*-/s/ - Trent A. Howell –*
*Electronically filed & signed-*
Attorney Trent A. Howell